UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVEN OLSON,

        Plaintiff,

v.                                       Case No. 12-C-1126

BEMIS COMPANY, INC. et al.,

        Defendants.

**DECISION AND ORDER DENYING DEFENDANTS'
MOTION TO DISQUALIFY COUNSEL**

Plaintiff Steven Olson filed this action alleging that his employment at Defendant Bemis Company, Inc., was terminated without just cause in violation of the collective bargaining agreement and that his union, Defendant United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial, and Service Workers International Union, Local 2–0148 (collectively, the Union) breached its duty of fair representation in violation of Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Presently before the court is the Unions' motion to disqualify Olson's attorney, Peter Culp, and his law firm, Dempsey Law Firm, L.L.P, from representing him on the ground that Attorney Culp is likely to appear as a witness at trial. For the reasons that follow, the motion will be denied.

**BACKGROUND**

Olson was terminated from his employment with Bemis on February 3, 2012, after he sustained a work-related injury. The Local filed a timely grievance with the company and pursued

it through the initial steps of the grievance process. By letter dated March 19, 2012, Local Union Representative Chris Haddock informed Olson that based on the merits of the case, the Local Union Grievance Committee had decided not to take his grievance to arbitration. By that time, Olson had retained Attorney Peter Culp to represent him. On March 20, 2012, Attorney Culp sent a letter to the Local offering to represent both Olson and the Union at the arbitration, without cost to the Union, if the Union would request arbitration of the grievance. In his letter, Attorney Culp expressed the opinion that Olson's termination was without just cause and referenced the Union's duty of fair representation.

Haddock sent a letter to Culp in reply in which he stated that the Local had already decided not to pursue arbitration of Olson's grievance and would not change its assessment of the merits because Olson had retained an attorney. Haddock also explained, however, that Olson could take his grievance before the full membership at the upcoming Union meeting and the members could vote on whether to take it to arbitration. In a subsequent letter, Haddock directed Attorney Culp to refrain from contacting himself or any other Local members and instructed that any further communications should be directed to the International's attorney.

Olson presented his grievance at the March 21 Union meeting and offered to pay half the cost if the Union would take his grievance to arbitration. The membership voted to take the matter to arbitration, and Haddock informed Olson that the Union would pay the fees for the arbitrator, the transcript and the witnesses, and he would be responsible for the attorneys fees. Haddock also advised Bemis of the Union's decision to seek arbitration of the grievance and informed the company that Attorney Culp would be its representative at the hearing.

2

In early April, the Company offered to settle the grievance by either reinstating Olson or paying him $10,000. Haddock informed Olson of the settlement offer and claims that Olson agreed to settle for $20,000. Haddock claims he then presented the company with Olson's counteroffer, and the company agreed. The company drafted a settlement agreement, a copy of which was provided to Olson.

Olson denies that he ever agreed to settle his grievance for $20,000. In late April or early May, Attorney Culp sent both the company and the Union a settlement agreement under which the Company was to pay Olson $37,500, including $2,000 to Attorney Culp's trust account for attorney's fees. The Company rejected Culp's offer, and by letter dated May 7, 2012, Haddock informed Attorney Culp that the Union intended to accept the Company's $20,000 settlement offer before it expired. On the same day, the Union and the Company signed the Company's settlement agreement. Claiming that the Union violated its duty of fair representation, Olson filed this action. The Union now seeks an order disqualifying Attorney Culp from continuing to represent Olson on the ground that he will likely be a witness at trial.

**ANALYSIS**

Defendants argue that Attorney Culp must be disqualified from representing Olson in this litigation proceeding because he is likely to appear as a necessary witness at trial. Attorneys practicing before this court are subject to the Wisconsin Rules of Professional Conduct for Attorneys, which are adopted by the Wisconsin Supreme Court. General L.R. 83(d)(1); *see also Weber v. McDorman*, No. 00-C-0381-C, 2000 WL 34237498, *1 (W.D. Wis. Aug. 11, 2000) ("It is common practice for federal courts to apply state rules of professional conduct.").

3

Wisconsin Supreme Court Rule (SCR) 20:3.7 generally prohibits an attorney from representing a client at a trial in which the attorney is likely to testify as a witness:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work a substantial hardship on the client.
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by SCR 20:1.7 or SCR 20:1.9.

The Union argues that the rule extends to pretrial proceedings as well and that Attorney Culp should be disqualified from representing Olson at this point to avoid any prejudice to the defendants or delay in the case. The Union contends that it is clear that Attorney Culp will be a necessary witness at trial because of his settlement negotiations in the underlying grievance in April and May 2012.

The Union primarily relies on *Finn v. Harbor Metal Treating, Inc.*, Cause No. 3:09-CV-130 CAN, 2009 WL 3642753 (N.D. Ind. Oct. 29, 2009), and *Freeman v. Vicchiarelli*, 827 F. Supp. 300 (D.N.J. 1993), for the proposition that the "attorney-witness rule operates both during trial and during pre-trial discovery and negotiations." 827 F. Supp. at 303-04. But *Finn* relied, at least in part, on *Freeman*'s holding that the rule applied to pretrial proceedings as well as at trial. 2009 WL 3642753 at *3. And *Freeman*'s application of the attorney-witness rule was based on an ethics opinion published by an advisory committee that construed New Jersey's professional rules of attorney conduct. *Id.*

Wisconsin's SCR 20:3.7, however, at least as it is understood by the State Bar's Professional Ethics Committee, does not extend to pretrial proceedings. As explained by a November 2010 memorandum opinion published by the Wisconsin State Bar Professional Ethics Committee:

4

> [T]his prohibition applies only at trial, and a lawyer who may be prohibited from representing a client at trial by SCR 20:3.7 is not prohibited by that Rule from representing the client in pre-trial proceedings. SCR 20:3.7 also prohibits only the individual lawyer from representing the client at trial and the lawyer's firm is not disqualified by the Rule.

Wis. State Bar Prof'l Ethics Comm., Memorandum Op. M-10-02 (Nov. 1, 2010) (Lawyer as Witness), *available at* http://www.wisbar.org/formembers/ethics/Ethics%20Opinions/M-10-02.pdf.

The American Bar Association (ABA) likewise interprets the rule as applying only to trial and not pretrial proceedings. The ABA Committee on Ethics and Professional Responsibility has offered the following reasons for permitting an attorney-witness to continue representation during pre-trial: (1) the case may be settled in advance of trial, (2) the attorney's testimony may be replaced with other evidence at trial, (3) the client may choose to forego the attorney's testimony, (4) the rules allow the disqualified attorney's firm to continue representation, and (5) the attorney-witness may have the most knowledge about the case and the client would likely be prejudiced from the exclusion of the attorney-witness' participation during pre-trial. ABA Comm. on Ethics & Prof'l Responsibility, Informal Op. 89-1529 (1989).

This interpretation of the attorney-witness rule appears to be the majority approach in the courts as well. *See, e.g., DiMartino v. Eighth Jud. Dist. Ct. ex rel. Rivara-Rios*, 66 P.3d 945, 946-47 (Nev. 2003) ("In most jurisdictions, a lawyer who is likely to be a necessary witness may still represent a client in the pretrial stage. Some courts, however, have disqualified counsel in the pretrial stage. We believe the majority approach is the better reasoned one."); *see also Droste v. Julien*, 477 F.3d 1030, 1035 (8th Cir. 2007) (noting that in most jurisdictions, a lawyer who is likely to be a necessary witness may still represent a client in the pretrial stage and finding district court abused its discretion in disqualifying attorney before trial). It is also consistent with the general rule

5

that a party is entitled to be represented by an attorney of his or her choice and that disqualification is a drastic measure which courts should hesitate to impose except when absolutely necessary. *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993). Because Wisconsin follows the majority approach to the attorney-witness rule, as evident from the State Bar Ethics Committee memorandum opinion, the Union's motion to disqualify Attorney Culp is at best premature.

It is also unclear at this stage whether Attorney Culp will be a necessary witness at trial. The Union argues that Attorney Culp must testify about his involvement in the settlement negotiations between Olson, the Local Union, and Bemis. Attorney Culp, the Union contends, was a key participant in the negotiations and certain conversations and evidence can only be established through his testimony. For instance, already in the course of discovery, Attorney Culp requested that the defendants admit that Paul Footit, a staff representative of Bemis, received emails from Attorney Culp requesting that he provide disciplinary and grievance records. Footit submitted a declaration that he has no record of any such emails and that he does not recollect receiving any emails. (Footit Decl. ¶ 7, ECF No. 50.) The Union argues that because Attorney Culp is the only person who can authenticate that he sent any emails to Footit, he is likely to be a necessary witness at trial. In addition, the Union asserts that Attorney Culp is the only witness that can confirm Olson's rejection of Bemis' settlement offer. The Union notes that in another request to admit, Request No. 144, Attorney Culp asked the defendants to admit that "[o]n May 2, 2012, the plaintiff, by and through his legal counsel, informed Bemis Company, Inc. [t]hat the proposed terms of settlement of the Grievance were rejected." (Robbins Decl. Ex. A at 13, ECF No. 35.)

As Olson points out, however, other witnesses to his rejection of the Company's $20,000 are available, such as Olson and his spouse. Other witnesses, such as Union representatives or the

6

Union members present at the meetings can also testify to facts in issue without the need to resort to Attorney Culp's testimony. But even if the Union is correct and Attorney Culp is a necessary witness at trial, there is still no need under the Wisconsin rule governing professional responsibility of lawyers to disqualify him at this point. *See Mercury Vapor Processing Tech., Inc. v. Vill. of Riverdale*, 545 F. Supp. 2d 783, 788 (N.D. Ill. 2008) (denying disqualification motion without prejudice reasoning that counsel could continue representation during pre-trial proceedings and it was too conjectural to determine whether counsel's testimony would be necessary). If it becomes clear after the conclusion of discovery that Attorney Culp's testimony will be necessary, then the Union may renew its motion if Attorney Culp does not withdraw on his own.

The Union argues that Attorney Culp should be disqualified now so that it will not be impeded in its efforts to depose him. But it is not clear why the Union cannot take Attorney Culp's deposition now if it believes he has relevant, unprivileged information. As the Eighth Circuit observed in *Droste*, the rule against an attorney acting as a witness is intended to avoid jury confusion and possible prejudice to the opposing party if one party's attorney is permitted to act both as an advocate and a witness. 477 F.3d at 1036. But the jury is usually not privy to pretrial proceedings. If the Union takes Attorney Culp's deposition now and Attorney Culp later withdraws or is disqualified, the fact that he represented Olson previously in the action would not have to be conveyed to the jury. In short, unlike the court in *Finn*, this court does not question the ability of the defendants to meaningfully question Attorney Culp at a deposition even if he is still representing Olson. For practical reasons it may be the better practice, as the above-referenced ABA report states, that another lawyer serve as counsel to the client at such a deposition. But there is no requirement that the attorney/witness withdraw.

7

The Union also suggests that even if its only likely that Attorney Culp will be a witness at trial, it is better for him to step aside now so as to avoid any delay that would result from a last minute disqualification. Any attorney will need time to prepare for trial, and if Attorney Culp continues to represent Olson only to be required to step down and have a new attorney take his place later, the Union suggests, it will be prejudiced by having to wait for the new attorney to familiarize with the facts and evidence, and prepare for trial. Any such risk can be avoided, however, by providing a clear warning, as the court does now, that no delays will be permitted because of a late decision by Attorney Culp to withdraw. Olson and his attorney are on notice that a request to adjourn a scheduled trial for such reason will not be considered so that any such decision will be made in plenty of time for another attorney to step in and take over the case for trial.

Accordingly and for the foregoing reasons, the Union's motion to disqualify (ECF No. 33) is **denied without prejudice**. Olson's motion to strike or for leave to file a sur-reply (ECF No. 52) is **denied as moot**. The partial stay of discovery is vacated, and the Clerk is directed to set this matter on the calendar for a telephone conference to address further scheduling.

**SO ORDERED** this ___26th___ day of April, 2013.

                                               s/ William C. Griesbach
                                               William C. Griesbach, Chief Judge
                                               United States District Court